FILED

AUG 22 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:

DIANE KAY McCRAY,

                Debtor(s).

_____

GEOFFREY RICHARDS, Chapter 7
Trustee,

                Plaintiff(s),

v.

STARR'S BUILDING SUPPLY, INC.,
a California corporation,

                Defendant(s).

_____

Case No. 15-23586-B-7

Adversary No. 15-2184

**NOT FOR PUBLICATION**

**DECISION AFTER TRIAL**

## I.   INTRODUCTION

This is an action by plaintiff Geoffrey Richards against
defendant Starr's Building Supply, Inc.  Plaintiff is the trustee
appointed in the underlying chapter 7 case filed on April 30,
2015, by debtor Diane Kay McCray as case no. 15-23586.  Defendant
is a California corporation.  Based on a pre-petition state court
default judgment entered against the debtor, defendant is also a
creditor in debtor's chapter 7 case.[1]

---

[1]Based on that judgment, on September 10, 2015, defendant
filed proof of claim no. 16.  The proof of claim states a claim
amount of $834,968.45, of which $200,000 is secured and the
balance of $634,968.45 is unsecured.

The complaint in this adversary proceeding was filed on September 17, 2015.  The complaint and summons were served on defendant on September 18, 2015.  An amended complaint was filed and served on defendant on October 8, 2015.  Defendant answered the amended complaint on November 4, 2015.  Defendant's answer to the amended complaint included a "cross-claim" against the plaintiff which the court designated as a counterclaim and dismissed with prejudice in an order filed on April 3, 2016.

Defendant's answer admits the court's jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a).  It also admits that this adversary proceeding is a core matter under 28 U.S.C. §§ 157(b)(2)(A), (B), (F), and (K).  And it admits venue is proper under 28 U.S.C. § 1409(a).  Nevertheless, to the extent this adversary proceeding may ever be determined to be a matter that a bankruptcy judge may not hear and determine without consent, the parties consent to such determination by a bankruptcy judge.  See 28 U.S.C. § 157(c)(2).

The amended complaint alleges seven claims for relief: (1) a § 547 preferential transfer and avoidance claim; (2) a claim to declare defendant's liens on the debtor's properties invalid; (3) breach of contract; (4) interference with business relations; (5) an objection to the defendant's proof of claim; (6) equitable subordination; and (7) slander of title.  Plaintiff seeks damages, including attorney's fees, on the third, fourth, and seventh claims for relief and attorney's fees as the prevailing party on the first claim for relief.

Trial in this matter was held and concluded on June 27, 2016.  Appearances were noted on the record. At the start of the

trial the court made several pre-trial rulings on the record in open court.[2]  Those rulings are ratified and incorporated into this decision by reference.  The court also requested post-trial briefing on the issue of attorney's fees which the parties filed on July 11, 2016.[3]

Pursuant to Federal Rule of Evidence ("Evidence Rule") 201, the court also takes judicial notice of the docket in this adversary proceeding, the docket in the debtor's chapter 7 case, the docket in the related chapter 7 case filed in this court on April 17, 2015, by J.F. McCray Plastering, Inc. ("JFMPI") as Case No. 15-23164, and the docket in the related case filed in the Sacramento County Superior Court captioned *Starr's Building*

---

[2]Defendant's objections to plaintiff's direct testimony declarations and exhibits were overruled.  Plaintiff's objection to defendant's direct testimony declaration and exhibits were overruled in part and sustained in part:  The objection based on the timeliness of disclosures prior to trial was overruled and the objection under Federal Rule of Civil Procedure ("Civil Rule") 37(c)(1) (applicable by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7037) and Local Bankruptcy Rule 9017-1(d) was granted,  which resulted in an exclusion of defendant's witnesses and exhibits not previously disclosed as required by Civil Rule 26(a)(1)(A) (applicable by Bankruptcy Rule 7026) and the Order to Confer on Initial Disclosures and Setting Deadlines entered on September 17, 2015.  Following that exclusionary ruling, plaintiff's attorney stated that plaintiff did not object to the admission of defendant's direct testimony declaration and exhibits.  Plaintiff also elected to not call any witnesses and to rest on the written record admitted into evidence consisting of the parties' direct testimony declarations and exhibits.

[3]Defendant filed an unauthorized declaration of Steve Boeger on July 11, 2016, with its supplemental brief.  Mr. Boeger is also an undisclosed witness subject to the court's exclusionary ruling explained in footnote 2, supra.  Therefore, plaintiff's objection to Mr. Boeger declaration filed on July 12, 2016, is sustained, and Mr. Boeger's declaration is stricken from the docket.

1  *Supply, Inc. v. J.F. McCray Plastering, Inc., et al.*; Case No.
2  34-2014-00167272 ("State Court Litigation").  See <u>U.S. ex rel.</u>
3  <u>Robinson Rancheria Citizen's Council v. Borneo</u>, 971 F.2d 244, 248
4  (9th Cir. 1992); <u>U.S. v. Wilson</u>, 631 F.2d 118, 119 (9th Cir.
5  1980).

6      This decision constitutes the court's findings of fact and
7  conclusions of law made pursuant to Civil Rule 52(a) applicable
8  by Bankruptcy Rule 7052.

9  **II.  FACTS**

10      From February 18, 2013, through June 30, 2014, defendant
11 provided drywall and other building supplies to JFMPI.  Defendant
12 supplied JFMPI with drywall and other building supplies for a
13 construction project on which JFMPI was a subcontractor.

14      On or about January 8, 2014, defendant received an
15 Application for Credit from an entity identified on the credit
16 application as J.F. McCray, Inc. ("JFMI").  However, the tax
17 identification number in the box on the credit application marked
18 "FED. TAX ID" is identical to the tax identification number
19 included on JFMPI's chapter 7 petition.  The debtor signed the
20 credit application as "CEO" and she signed JFMPI's chapter 7
21 petition as an "officer."  The credit application also includes a
22 "Continuing Guarantee" section which the debtor signed as a
23 "Guarantor."

24      Anticipating that it would not be paid for the drywall and
25 construction supplies it provided JFMPI, defendant initiated the
26 State Court Litigation on or about August 6, 2014.  The complaint
27 filed in that state court action named JFMPI, the debtor, and
28 another individual as defendants.  The debtor was sued as a

- 4 -

guarantor.  None of the defendants answered the complaint or otherwise defended.  Accordingly, on or about November 26, 2014, the state court entered a default judgment in the amount of $731,387.43 against all defendants.  A notice of the entry of that judgment was filed in the state court on December 26, 2014.

Based on the judgment entered in the State Court Litigation, on or about December 29, 2014, defendant recorded a lis pendens against the debtor's real property located at 2590 South River Road, West Sacramento, Yolo County, California ("River Road Property").  Thereafter, defendant recorded abstracts of judgment in Yolo County on January 30, 2015, in Sacramento County on February 18, 2015, in Solano County on February 23, 2015, and in Los Angeles County on March 11, 2015.

Shortly after the debtor filed her chapter 7 petition on April 30, 2015, plaintiff and his attorney obtained and reviewed a preliminary title report for the River Road Property.  They formed an opinion that defendant's lis pendens was improper because it was based on a judgment entered in an action that did not involve real estate or real estate claims.  They also believed that the abstract of judgment recorded in Yolo County was avoidable as a § 547 preferential transfer.[4]  Without these encumbrances, plaintiff believed that the River Road Property

---

[4]In addition to the River Road Property, plaintiff also learned that the debtor transferred three other properties, one in Yolo County and two in Sacramento County, to family members shortly before she filed her chapter 7 petition.  Those properties were also encumbered with the liens created by the abstracts of judgment recorded in the respective counties.  The recovery of those properties is dealt with in separate litigation by the plaintiff.  Defendant's liens on those properties created by the recorded abstracts of judgment have since been released.

would have substantial equity for the benefit of the estate and creditors.

In an effort to liquidate the River Road Property, in June and July of 2015 the parties' attorneys discussed defendant's release of its lis pendens and the lien on that property created by the recorded abstract of judgment.  Although defendant's attorneys stated they were unfamiliar with bankruptcy law and required time to look into the voidability of the abstract of judgment recorded in Yolo County, following a conversation on July 2, 2015, plaintiff's attorney sent defendant's attorney an email that stated defendant agreed to release its lis pendens/lien on the River Road Property if plaintiff found a buyer for the property.  Notably, that email makes no mention of any promise by the plaintiff to refrain from suing defendant to avoid the lis pendens and lien on the River Road Property (or to refrain from suing the defendant for anything else) in exchange for defendant's promise to sign lis pendens/lien release documents.

Thereafter, on August 21, 2015, plaintiff's attorney sent defendant's attorney lis pendens/lien release documents which he requested defendant sign and return by August 28, 2015.  At about that time, and contingent on bankruptcy court approval, plaintiff contracted with a buyer for the sale of the River Road Property for $612,000 after receiving and reviewing several offers. Plaintiff anticipated a hearing to approve that sale sometime in September 2015.

On September 3, 2015, defendant's attorney confirmed receipt of the lis pendens/lien release documents and requested

additional time for defendant to sign and return the documents. Defendant's attorney also asked plaintiff's attorney for additional information about the sale.

Then, in an email sent on September 8, 2015, defendant's attorney informed plaintiff's attorney that defendant decided it would not sign the lis pendens/lien release documents. In a separate email later that same date, defendant's attorney explained that defendant was not comfortable signing the lis pendens/lien release documents because it lacked information about the sale, buyer, and an anticipated condemnation proceeding involving the property. In a response later that evening, plaintiff's attorney declined to identify the buyer but offered to further discuss the sale and condemnation proceedings with defendant's attorney.

Three days later, on September 11, 2015, plaintiff's attorney sent defendant's attorney a letter that plaintiff's attorney refers to in his declaration as a "final demand for defendant to sign the release documents." That letter outlined the parties' prior communications, restated plaintiff's position that defendant agreed to release its lis pendens/lien on the River Road Property if a buyer was found, and confirmed that a buyer was found. Significantly, for the first time, that letter mentioned litigation and included a threat by plaintiff to sue defendant if defendant did not sign and return the lis pendens/lien release documents.

Defendant's attorney responded in an email on September 17, 2015, in which he stated he was happy to cooperate with the plaintiff but defendant could not sign the lis pendens/lien

release documents because it still lacked sufficient information about the buyer, sale, and condemnation proceedings. Defendant's response was apparently unpersuasive. At 2:20 p.m. on September 17, 2015, plaintiff's attorney sent defendant's attorney another email that included the complaint that commenced this adversary filed earlier that day at 12:58 p.m.

As a result of defendant's decision to not sign the lis pendens/lien release documents, plaintiff was unable to set a hearing and obtain bankruptcy court approval for the sale of the River Road Property in September 2015 as he initially anticipated. The delay caused by defendant's decision also necessitated plaintiff's intervention in the State Court Litigation to respond to a notice of automatic stay and expunge the lis pendens on the River Road Property, which the state court ordered expunged on November 16, 2015, and expunged in an order dated December 3, 2015. And it also resulted in the estate's additional involvement in River Road Property condemnation proceedings initiated by the West Sacramento Area Flood Control Agency and related litigation filed in Yolo County Superior Court.

Nevertheless, on or about December 8, 2015, defendant provided plaintiff with a withdrawal of the lis pendens and a partial satisfaction of the state court judgment as it pertained to the River Road Property. About a week later, on December 14, 2015, plaintiff filed a motion to approve the sale of the River Road Property to Elizabeth Stefanik for $612,000. The motion to approve the sale and the attached sale agreement confirmed that the sale to Ms. Stefanik was contingent on bankruptcy court

1   approval.  That motion was heard on January 12, 2016, and, after
2   substantial overbidding that occurred in open court, the court
3   approved the sale of the River Road Property to a different
4   buyer, Kosla Properties, LLC, for $730,000.  An order approving
5   that sale was filed on January 13, 2016.

6         On or about April 4, 2016, defendant voluntarily released
7   all remaining liens created by the abstracts of judgment recorded
8   in Yolo, Sacramento, Solano, and Los Angeles Counties.

9   **III. DISCUSSION**

10        A.    <u>First Claim for Relief (Avoidance of § 547 Preferential</u>
              <u>Transfers) and Second Claim for Relief (Determination</u>
11            <u>and Declaration of Lien Validity)</u>

12              1.    <u>Merits</u>

13        The first claim for relief alleges a § 547 preference claim.
14  It alleges the trustee is entitled to avoid liens that defendant
15  acquired on the debtor's real properties when it recorded
16  abstracts of judgment in Yolo, Sacramento, Solano, and Los
17  Angeles Counties.  The second claim for relief seeks a
18  declaration that those liens, and the lis pendens recorded
19  against the River Road Property, are invalid.

20        The lis pendens was ordered expunged on or about November
21  16, 2015, and formally expunged in an order entered in the State
22  Court Litigation on or about December 3, 2015.  Defendant
23  voluntarily released all of the liens created by the abstracts of
24  judgment recorded in each of the referenced counties on or about
25  April 4, 2016.  Inasmuch as defendant no longer has any liens to
26  avoid or declare invalid, the first and second claims for relief
27  are moot.  The court has no power to adjudicate moot claims.  <u>See</u>
28  <u>Goldin v. Bartholow</u>, 166 F.3d 710, 718 (5th Cir. 1999) (citations

1  omitted).

2      Therefore, to the extent the first and second claims for

3  relief request a judgment avoiding and invalidating non-existent

4  liens, those claims for relief are dismissed as moot.

5              2.   Attorney's Fees on the § 547 Claim

6      Plaintiff requests attorney's fees as the prevailing party

7  on the § 547 preference claim alleged in the first claim for

8  relief.  Plaintiff maintains he is the prevailing party because

9  he achieved the purposes of this claim when defendant voluntarily

10  released its lis pendens on the River Road Property and the liens

11  created by the recorded abstracts of judgment.  However, even

12  assuming plaintiff is the prevailing party on the first claim for

13  relief, plaintiff has not demonstrated that attorney's fees are

14  recoverable on the § 547 preferential claim under California law.

15  Therefore, judgment for attorney's fees will not be entered for

16  the plaintiff.

17      The Bankruptcy Code does not provide a general right to

18  recover attorney's fees.  Heritage Ford v. Baroff (In re Baroff),

19  105 F.3d 439, 441 (9th Cir. 1997).  Nevertheless, a prevailing

20  party on a bankruptcy law claim may recover attorney's fees if

21  recovery is permitted under a state statute or contract.  Cohen

22  v. de la Cruz, 523 U.S. 213, 220-21 (1998); Cardenas v. Shannon

23  (In re Shannon), — B.R. —, 2016 WL 4009673 at *11 (9th Cir. BAP

24  2016); Redwood Theaters, Inc. v. Davison (In re Davison), 289

25  B.R. 716, 722 (9th Cir. BAP 2003).

26      Plaintiff relies on California Civil Code § 1717 as the

27  basis for an award of attorney's fees.  Plaintiff asserts § 1717

28  applies because the § 547 preference claim arose out of the

1  guarantee in the credit application and § 1717 makes a unilateral

2  fee provision in that agreement mutual.  The court disagrees with

3  plaintiff's initial premise, namely, that the § 547 preference

4  claim arose from the guarantee.

5      California Civil Code § 1717 states:

6          In any action on a contract, where the contract
           specifically provides that attorney's fees and costs,
7          which are incurred to enforce that contract, shall be
           awarded either to one of the parties or to the
8          prevailing party, then the party who is determined to
           be the prevailing party on the contract, whether he or
9          she is the party specified in the contract or not,
           shall be entitled to reasonable attorney's fees in
10         addition to other costs.

11     By its plain terms, § 1717 only permits an award of

12  attorney's fees in an action "on a contract."  Davison, 289 B.R.

13  at 722.  If a bankruptcy court does not need to determine whether

14  a contract is enforceable, or if a contract is not an integral

15  part of the bankruptcy court's consideration, then a federal

16  bankruptcy claim is not an action "on a contract" within the

17  meaning of § 1717.  Bos v. Board of Trustees, 818 F.3d 486,

18  489-90 (9th Cir. 2016); Davison, 289 B.R. at 723; see also

19  Arciniega v. Clark (In re Arciniega), 2016 WL 455428 at *13-14

20  (9th Cir. BAP 2016).  For example, in Bos, the Ninth Circuit

21  explained that a claim arose entirely under the Bankruptcy Code

22  and was not "on a contract" within the meaning of § 1717 when it

23  did not require the bankruptcy court to determine whether or to

24  what extent contracts in the case were enforceable or violated.

25  Id. at 490.  The court noted those questions had been answered in

26  arbitration and confirmed by a state court.  Id.

27     Here, like Bos, resolution of the § 547 preference claim

28  would not require the court to determine whether or to what

extent the guarantee is enforceable against the debtor and/or
whether it was violated or even applicable.  That is because,
again like <u>Bos</u>, the debtor's liability on that guarantee was
resolved and established by a valid and final judgment entered
against the debtor in the State Court Litigation.[5]  That means
the § 547 preference claims alleged in the first claim for relief
arose from the judgment entered against the debtor, not the
guarantee.[6]  That also means the guarantee was not (and would not
have been) integral to the § 547 preference avoidance claim.  In
short, the first claim for relief is not a claim "on a contract"
and § 1717 is inapplicable.  Therefore, attorney's fees are

---

[5]The debtor did not appeal from that judgment. In an
unlimited civil action such as the State Court Litigation, *i.e.*,
an action over $25,000, if no notice of appeal is filed, a
judgment becomes final on the earlier of (1) 60 days after
service of a notice of entry of judgment; or (2) 180 days after
the entry of the judgment.  <u>See</u> California Rules of Court Rule
8.104(a).  Notice of entry of the judgment entered against the
debtor was served on December 26, 2014.  No timely notice of
appeal was thereafter filed which means the judgment entered
against the debtor became final on February 24, 2015.

[6]Notably, the debtor views her liability to the defendant as
arising from the judgment and not the guarantee.  The debtor
listed her debt to the defendant in Schedule F as a non-
contingent, liquidated, and undisputed debt in the amount of
$731,000 based on the judgment entered against her in the State
Court Litigation.  At a minimum, the debtor's statement in
Schedule F is an evidentiary admission by the debtor admissible
under Evidence Rule 801(d)(2).  <u>In re Applin</u>, 108 B.R. 253, 259
(Bankr. E.D. Cal. 1989).  Even if that admission is not binding
on the plaintiff in his capacity as the trustee in the debtor's
chapter 7 case, <u>see</u> <u>Kirkland v. B-Line, LLC (In re Kirkland)</u>, 572
F.3d 838, 840-41 (10th Cir. 2009), it nevertheless has
evidentiary value as a statement by the debtor made under penalty
of perjury, <u>see</u> Fed. R. Bankr. P. 1008, and is evidence of the
basis of the debtor's debt to the defendant (and the defendant's
claim against the debtor) in the debtor's chapter 7 case.
<u>Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric.</u>, 692 F.3d
960, 969 (9th Cir. 2012).

unrecoverable on what is exclusively a bankruptcy law claim under § 547 in the first claim for relief.

The other provision upon which plaintiff relies, California Civil Code § 1021, is equally inapplicable.  In the absence of a statutory basis for the recovery of attorney's fees, California Civil Code § 1021 provides for recovery of attorney's fees under an agreement.  Section 1021 states as follows:

> Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided.

Here, as explained in § III.B., _infra_, there is no enforceable agreement between the plaintiff and the defendant because there is no evidence that defendant's promise to sign lis pendes/lien release documents is supported by consideration.  And even if that promise created an enforceable agreement, there is no evidence it included any provision for the payment of any attorney's fees.

Therefore, for the foregoing reasons, plaintiff's request for attorney's fees as a prevailing party on the § 547 preference claim in the first claim for relief is denied with prejudice.  Judgment for attorney's fees will not be entered for the plaintiff on that claim.

B.   Third Claim for Relief (Breach of Contract)

The third claim for relief alleges a breach of contract claim.  Under the California Civil Code, there are four essential elements to the existence of a contract: (i) parties capable of contracting, (ii) their consent, (iii) a lawful object, and (iv)

- 13 -

1  sufficient cause or consideration.  See Cal. Code Civ. § 1550;

2  Lopez v. Charles Schwab & Co., 118 Cal. App. 4th 1224, 1230

3  (2004).  The breach of contract claim in the third claim for

4  relief fails on the fourth element, i.e., lack of consideration.

5  During the argument phase of trial, the court asked the

6  parties' attorneys to identify the consideration for the

7  defendant's promise to the plaintiff to sign lis pendens/lien

8  release documents.  Plaintiff stated that the consideration for

9  that promise was a forbearance from litigation.  Defendant, on

10  the other hand, stated there was none.  Defendant is correct.

11  Although the July 2, 2015, email from plaintiff's attorney

12  to defendant's attorney confirmed plaintiff's promise to release

13  its lis pendens/lien on the River Road Property if plaintiff

14  found a buyer for the property, there is no mention in that email

15  (or in any of the other emails or the direct testimony

16  declarations) of any promise by the plaintiff to not sue

17  defendant over the lis pendens/lien (or any other matter) in

18  exchange for defendant's promise to sign the lis pendens/lien

19  release documents.  In fact, the first mention of any litigation

20  by the plaintiff against the defendant is in the September 11,

21  2015, demand letter from plaintiff's attorney to the defendant's

22  attorney.  That letter, however, is a threat to initiate

23  litigation against the defendant after defendant informed

24  plaintiff it decided to not sign the release documents made long

25  after the July 2, 2015, email that referenced the defendant's

26  promise to sign those documents.

27  In short, the court finds no evidence that defendant's

28  promise to sign lis pendens/lien release documents is supported

by any "act or promise-in-return, bargained for and given in exchange [by the plaintiff] for the [defendant's] initial promise." <u>Synnex Corp. v. Wattles</u>, 2012 WL 5524953 at *7 (N.D. Cal. 2012) (citation omitted).  In other words, defendant's promise is not supported by consideration.  In the absence of consideration there is no enforceable contract, and in the absence of an enforceable contract there can be no recovery on a claim for breach of contract.  <u>U.S. Ecology, Inc. v. State</u>, 92 Cal. App. 4th 113, 128-29 (2001) (citation omitted) ("A promise is not enforceable unless consideration was given in exchange for the promise.").

Alternatively, even if defendant's promise to sign lis pendens/lien release documents was supported by consideration, the court would nevertheless conclude that plaintiff failed to carry his burden of demonstrating that the estate suffered damages as a result of defendant's breach of that promise.  That breach, if there was one, resulted in a sale of the River Road Property in January 2016 for $730,000.  That is $118,000 over the $612,000 sales price plaintiff expected to receive upon the sale of the property in September 2015.  Thus, even if the defendant's breach of its promise to sign the lis pendens/lien release documents delayed the sale of the River Road Property and events during that delay caused the estate to incur $59,000 in attorney's fees, the estate still netted $59,000 more than it expected to receive upon sale of the property to Ms. Stefanik in September 2015.

Therefore, for the foregoing reasons, judgment on the third claim for relief will be entered for the defendant and against the plaintiff with plaintiff taking nothing on the breach of

contract claim.

C.  <u>Fourth Claim for Relief (Interference With Business Relations)</u>

The fourth claim for relief is captioned as a claim for "Interference with Business Relations." However, ¶¶ 43 and 44 of the amended complaint allege that when defendant decided to not sign the lis pendens/lien release it "knew the [plaintiff] was in a written and enforceable *contract* to sell the River Road Property . . . [and defendant] intended to disrupt *that contract* and the River Road Sale[.]" (Emphasis added). Page 14 of plaintiff's trial brief also recites the elements of - and argues that the fourth claim for relief is - a claim for intentional interference with contractual relations. Therefore, the court construes the fourth claim for relief as a claim for intentional interference with contract.

Under California law, the elements of a tortious interference with contract claim are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage. Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers, 795 F.3d 1124, 1133 (9th Cir. 2015); Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal. 3d. 1118, 1126 (1990). However, interference with a contingent contract where the contingency never occurs will not support an intentional interference claim. Meadow Ltd. P'ship v. Heritage Sav. & Loan Ass'n, 639 F. Supp. 643, 652 (E.D. Va. 1986).

- 16 -

1    Plaintiff asserts that defendant interfered with his
2 contract for the sale of the River Road Property to Ms. Stefanik
3 by not voluntarily removing its lis pendens and releasing the
4 lien on the property created by the abstract of judgment recorded
5 in Yolo County.  The contract between plaintiff and Ms. Stefanik
6 was contingent on bankruptcy court approval.  That contingency
7 never occurred because the River Road Property was ultimately
8 sold to Kosla through the overbid process that took place in open
9 court on January 12, 2016.  Thus, even assuming that defendant's
10 decision to not sign the release documents made plaintiff's sale
11 of the River Road Property more costly and time-consuming, all
12 that plaintiff has established is that defendant interfered with
13 a contingent contract where the contingency never occurred.  And,
14 as stated above, that will not support an intentional
15 interference with contract claim.

16    Therefore, for the foregoing reasons, judgment on the fourth
17 claim for relief will be entered for the defendant and against
18 plaintiff with plaintiff taking nothing on the intentional
19 interference with contract claim.

20    D.    Fifth Claim for Relief (Claim Objection)

21    The fifth claim for relief is plaintiff's objection to the
22 $834,968.35 proof of claim that defendant filed on September 10,
23 2015.  Based on the abstracts of judgment recorded in Yolo,
24 Solano, Sacramento, and Los Angeles Counties, defendant filed
25 that proof of claim as a $200,000 secured claim and an unsecured
26 claim for the balance of $634,968.45.

27    Plaintiff raises three objections to defendant's claim:  (1)
28 it is unenforceable against the debtor because (a) the debtor

guaranteed JFMI's and not JFMPI's debts and/or (b) defendant is
not the beneficiary of the debtor's guarantee; (2) defendant's
claim is not a secured claim; and (3) the amount of defendant's
claim is overstated.

### 1. <u>Disallowance</u>

Plaintiff's request for disallowance of defendant's claim in
its entirety is an attempt by the plaintiff to re-litigate the
judgment entered against the debtor in the State Court
Litigation.  Plaintiff maintains the claim is unenforceable
against the debtor because the debtor is not liable on the
guarantee in the credit agreement.  However, as explained in §
III.A.2, <u>supra</u>, the debtor's liability on the guarantee was
established through the state law default judgment process which
resulted in a valid and final judgment entered against the debtor
in the State Court Litigation.  Indeed, the debtor concedes as
much in her Schedules.

Additionally, the debtor did not appeal from the judgment
entered against her and thereby relinquished any right to
challenge her liability.  Plaintiff, as the trustee appointed in
the debtor's chapter 7 case, "succeeds to the debtor's rights to
the extent that those rights exist at the time of the
[plaintiff's] appointment." <u>In re Merry-Go-Round Enter., Inc.</u>,
229 B.R. 337, 345 (Bankr. D. Md. 1999).  As the trustee appointed
in the debtor's chapter 7 case, plaintiff acquired only those
rights the debtor had when she filed her petition.  <u>Id</u>.  Since
the debtor did not timely appeal, she no longer had any right to
challenge the judgment entered against her in the State Court
Litigation when she filed her chapter 7 petition.  Likewise, the

- 18 -

1  plaintiff acquired no such right.  Therefore, for the foregoing
2  reasons, defendant's claim will not be disallowed in its
3  entirety.  However, it will be adjusted in the manner set forth
4  below.

5      2.   Classification

6      Plaintiff next objects to the secured status of defendant's
7  claim stated in its proof of claim.  The liens created by the
8  abstracts of judgment that defendant recorded in Yolo, Solano,
9  Sacramento, and Los Angeles Counties have all been released.  The
10  lis pendens was also expunged and released.  And the River Road
11  Property has been sold.  As a result, there is no security for
12  defendant's claim.  Therefore, plaintiff's objection to the
13  secured status of defendant's claim will be sustained in part.
14  Defendant's claim shall be designated as an allowed general
15  unsecured claim in its entirety.

16      3.   Amount

17      Plaintiff further objects to the amount of defendant's
18  claim.  Plaintiff asserts that the amount stated in defendant's
19  proof of claim - $834,968.45 - is overstated.  The court agrees.

20      The judgment entered against the debtor in the State Court
21  Litigation is $731,387.43.  Defendant has failed to substantiate
22  any amount in excess of the judgment amount.  See Fed. R. Bankr.
23  P. 3001(c)(2)(A).  Therefore, the court sustains this objection,
24  in part, and disallows $103,581.02.  Defendant's general
25  unsecured claim shall be reduced to $731,387.43.

26      E.   Sixth Claim for Relief (Equitable Subordination)

27      The sixth claim for relief is an equitable subordination
28  claim under § 510(c).  Section 510(c) states that "the court may—

1      under principles of equitable subordination,
       subordinate for purposes of distribution all or part of
2      an allowed claim to all or part of another allowed
       claim or all or part of an allowed interest to all or
3      part of another allowed interest[.]

4    11 U.S.C. § 510(c)(1).

5        The proponent of subordination bears the burden of proving:

6    (1) the claimant who is to be subordinated engaged in inequitable

7    conduct; (2) the misconduct results in injury to competing

8    claimants or an unfair advantage to the claimant to be

9    subordinated; and (3) subordination is not inconsistent with

10   bankruptcy law. <u>Paulman v. Gateway Venture Partners, III, L.P.</u>

11   <u>(In re Filtercorp)</u>, 163 F.3d 570, 583 (9th Cir. 1998).   Plaintiff

12   has failed to carry its burden on the first and second elements.

13       The conduct pegged as inequitable is the defendant's

14   decision to not cooperate with the plaintiff and voluntarily

15   release it lis pendens/lien on the River Road Property.   However,

16   based on a review of the evidence, the court is persuaded

17   defendant decided not to sign the lis pendens/lien release

18   documents because it was unfamiliar with bankruptcy law, and it

19   lacked sufficient information about the sale of and other

20   proceedings affecting the River Road Property to allow it to make

21   an informed decision about its claim in the bankruptcy process

22   and its rights under the Bankruptcy Code.   Defendant's decision

23   to not voluntarily surrender to the trustee, under these

24   circumstances, is not inequitable. <u>See</u> <u>Misty Management Corp. v.</u>

25   <u>Lockwood</u>, 539 F.2d 1205, 1215 (9th Cir. 1976) (stating that the

26   Bankruptcy Code does not penalize a creditor for not surrendering

27

28

- 20 -

1    voluntarily).[7]

2         Therefore, for the foregoing reasons, on the sixth claim for

3    relief judgment will be entered for the defendant and against the

4    plaintiff and defendant's claim will not be equitably

5    subordinated.

6         F.   Seventh Claim for Relief - Slander of Title

7         The seventh claim for relief alleges a slander of title

8    claim.  The claim is limited to the lis pendens recorded against

9    the River Road Property.[8]  The elements of a claim for slander of

10   title under California law are (1) publication, (2) falsity, (3)

11   absence of privilege and (4) disparagement of another's land

12   which is relied upon by a third party and which results in a

13   pecuniary loss.  Smith v. Commonwealth Land Title Ins. Co., 177

14   Cal. App. 3d 625, 630 (1986) (quoting Appel v. Burman, 159 Cal.

15   App. 3d 1209, 1214 (1984)).  Plaintiff has failed to carry his

16   burden of demonstrating reliance by a third party that resulted

17   in pecuniary loss to the estate.

18        The court is not persuaded that a third party's reliance on

19

20   _____

21   [7]As explained above, the court is also unable to conclude
     that defendant's conduct harmed any other creditor or provided
22   defendant with some unfair advantage in the debtor's chapter 7
     case.  If anything, as is also explained above, defendant's
23   conduct netted the estate an additional $59,000 more than it
     would have received from the sale of the River Road Property to
24   Ms. Stefanik for $612,000 in September 2015.

25   [8]Plaintiff improperly attempts to expand the claim in his
     trial brief which contradicts the amended complaint and argues
26   that the slander of title claim includes the lis pendens and the
     liens created by the recorded abstracts of judgment.  Inasmuch as
27   the latter is not alleged as a basis of liability in the amended
     complaint, the court does not consider it included in the seventh
28   claim for relief.

                                - 21 -

the lis pendens resulted in a pecuniary loss to the estate.  For example, even while subject to the lis pendens in August 2015 there was substantial interest in the River Road Property. Indeed, during that time plaintiff received multiple offers to purchase the property.  The lis pendens also did not cause Ms. Stefanik to withdraw her offer or cancel her contract to purchase the River Road Property.  Ms. Stefanik signed the buy-sell agreement in August of 2015 and remained the buyer both before and after the lis pendens was expunged and released.  Ms. Stefanik also appeared on January 12, 2016, fully prepared to perform under the buy-sell agreement only to be outbid by Kosla who purchased the property for $730,000.  And while the defendant's decision to not release the lis pendens on the River Road Property delayed the sale and required the estate to expend resources, as explained above, that proved to be a benefit to the estate insofar as the delay netted the estate $59,000 more than it would have received had the plaintiff sold the River Road Property to Ms. Stefanik for $612,000 in September 2015.

Therefore, for the foregoing reasons, judgment on the seventh claim for relief will be entered for the defendant and against the plaintiff with plaintiff taking nothing on the slander of title claim.

**IV.  CONCLUSION**

Based on the above, judgment will be entered as follows:

(1)  dismissing the first and second claims for relief as moot;

(2) for the defendant and against the plaintiff on the third, fourth, sixth, and seventh claims for relief;

(3)   for the plaintiff, in part, and against the defendant, in part, on the fifth claim for relief whereby defendant's claim as stated in its proof of claim shall be deemed an allowed general unsecured claim in the amount of $731,387.43; and

(4) denying with prejudice plaintiff's request for attorney's fees.

Dated:  August 22, 2016.

_____
UNITED STATES BANKRUPTCY JUDGE

- 23 -

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Dana A. Suntag
5757 Pacific, #222
Stockton CA 95207

Kevin A. Hughey
980 9th St 16th Fl
Sacramento CA 95814

- 24 -